[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 24-11459

Non-Argument Calendar

————————————————

PATRICIA JOHNSON,

Plaintiff-Appellant,

*versus*

ACTING COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cv-23717-CMA

————————————————

Before ROSENBAUM, LAGOA, AND ABUDU, Circuit Judges.

PER CURIAM:

Patricia Johnson appeals the district court's order affirming the denial of her applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). Johnson raises three issues on appeal, which we address in turn. First, she asserts that the administrative law judge ("ALJ") failed to consider whether her impairments met or medically equaled the criteria of Listing 1.15, and she argues that the ALJ's finding that her impairments did not meet or equal any listing is not supported by substantial evidence. Second, she argues that the ALJ's finding that she retains the residual functional capacity ("RFC") to perform limited sedentary work was not supported by substantial evidence. Finally, she argues that no substantial evidence supports the ALJ's finding that her statements on the intensity, persistence, and limiting effects of her symptoms were inconsistent with the evidence of record. After careful review of the record, we affirm.

**I.**

"When an ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the Commissioner's final decision." *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1045 (11th Cir. 2020) (quotation marks omitted).

"[W]e review *de novo* the legal principles upon which the Commissioner's decision is based." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "However, we review the resulting

decision only to determine whether it is supported by substantial evidence." *Id.* "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Id.* Thus, we must affirm the ALJ's decision, even if the evidence may preponderate against it, so long as it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).

To be eligible for DIB or SSI, the claimant must be disabled as defined by the Social Security Act. 42 U.S.C. §§ 423(a)(1)(E), 1382c(a)(3)(A)–(B). The Commissioner engages in a five-step process, as set out in 20 C.F.R. § 404.1520(a),[1] to determine whether a claimant is disabled. *Samuels*, 959 F.3d at 1045. This process includes an analysis of whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a listed impairment and meets the duration requirements; (4) can perform her past relevant work, in light of her RFC; and (5) can make an adjustment to other work, in light of her RFC, age, education, and work experience. *Id.* at 1045–46; 20 C.F.R. § 404.1520(a). If an ALJ finds a claimant disabled or not

---

[1] Separate regulations govern eligibility for DIB and SSI. *Compare* 20 C.F.R. pt. 404 (DIB), *with* 20 C.F.R. pt. 416 (SSI). However, "[t]he regulations for both programs are essentially the same." *Bowen v. City of New York*, 476 U.S. 467, 470 (1986).

disabled at any given step, the ALJ does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

## II.

Our Plaintiff-Appellant, Patricia Johnson, filed for DIB and SSI in June 2019. In her application, she alleged disability beginning on June 4, 2019, based on high blood pressure, a heart murmur, spinal stenosis, and an enlarged heart. In subsequent disability reports, Johnson alleged that she had back pain, left arm and shoulder pain, and neck pain. After her claims were denied at both the initial and reconsideration levels, Johnson requested an administrative hearing. On November 3, 2021, Johnson, represented by counsel, testified at a virtual hearing before an ALJ, Gracian Celaya. Regarding her employment history, Johnson testified that she used to work as a nurse assistant, waitress, and at a customer service center, where she "did[ ] a lot of sitting and taking orders over the computer." She further testified that she was now unable to work because of back pain radiating to her left side and causing numbness. Johnson testified that, on a scale of one to ten, her lower back pain was a ten.

On December 1, 2021, the ALJ issued an unfavorable decision, finding that Johnson was not disabled under section 1614(a)(3)(A) of the Social Security Act. Johnson requested review of the ALJ's decision, but the Appeals Council denied her request, transforming the ALJ's decision into the Commissioner's "final" decision. Having exhausted her administrative remedies, Johnson then filed this action in district court seeking judicial review of the

Commissioner's decision. Johnson and the Commissioner both filed motions for summary judgment. On January 31, 2024, a magistrate judge recommended that the district court deny Johnson's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the ALJ's decision. Over Johnson's objections, the district court adopted the magistrate judge's report and recommendation, affirming the Commissioner's final decision. This appeal follows.

**III.**

First, Johnson argues that the ALJ erred when he determined that her impairments did not meet or medically equal the criteria of Listing 1.15.

At step three of the analysis, the ALJ must determine whether any one of the claimant's impairments meets or equals an impairment listed in the Listing of Impairments in Appendix 1 and, if none does, whether the combined effect of her impairments is medically equal to a listed impairment. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002); 20 C.F.R. pt. 404, subpt. P, App. 1; *see also* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. The ALJ's statement that a claimant's impairments do not meet or equal a listing constitutes evidence that the ALJ considered their combined effect. *Wilson*, 284 F.3d at 1224. "While Appendix 1 must be considered in making a disability determination," the ALJ need not "mechanically recite the evidence leading to [his] determination." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986). "There may be an implied finding that a claimant does not meet a listing." *Id.* A

finding that the claimant does not meet a listing, whether express or implied, is reviewed for substantial evidence. *Id.* The claimant bears the burden of proving that she meets a listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).

To "meet" a listing, the claimant must have a "medically determinable impairment(s) that satisfies all of the criteria of the listing." 20 C.F.R. § 404.1525(d); *see Wilson*, 284 F.3d at 1224. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). To "equal" a listing, her impairments must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a); *see Wilson*, 284 F.3d at 1224. She "must present medical findings equal in severity to *all* the criteria for the one most similar impairment." *Zebley*, 493 U.S. at 531.

Listing 1.15 covers "[d]isorders of the skeletal spine resulting in compromise of a nerve root(s)." 20 C.F.R. pt. 404, subpt. P, App. 1, pt. A1, § 1.15. To meet or equal Listing 1.15, the claimant's impairment must be "documented by" the following: (A) radicular distribution of pain, paresthesia, or muscle fatigue; (B) radicular distribution of certain neurological signs; (C) findings on medical imaging of the cervical or lumbosacral spine; and (D) physical limitation of musculoskeletal functioning that has lasted or is expected to last for a continuous period of at least 12 months. *Id.* § 1.15A-D. "Related symptoms must be associated with, or follow the path of, the affected nerve root(s)." *Id.* § 1.00F(2); *see id.* § 1.15A, B(2), C &

D (requiring that evidence be impairment-related or consistent with nerve root compromise).

To satisfy criterion B, the claimant must show radicular distribution of three neurological signs present "during physical examination" or "on a diagnostic test." *Id.* § 1.15B. These signs must include both (1) muscle weakness and (2) nerve root compromise, and either (3) sensory changes—evidenced by (a) decreased sensation or (b) sensory nerve deficit on electrodiagnostic testing—or (4) decreased deep tendon reflexes. *Id.* § 1.15B(1)-(4). Diagnostic tests may include imaging, such as x-ray, CT, and MRI scans. *Id.* § 1.00C(3)(a).

To satisfy criterion D, the claimant must provide "medical documentation" establishing one of three scenarios. *Id.* § 1.15D. As relevant here, the second scenario has two component parts: (i) an inability to perform work-related fine and gross movements with one upper extremity and (ii) a medical need to hold an assistive device, such as a cane, with the other upper extremity. *Id.* § 1.15D(2). The claimant's medical need for a device must be documented in a physical examination report. *Id.* § 1.00C(2)(b). She need not have a "specific prescription," but she must provide "evidence from a medical source" that supports her medical need for the device for a continuous period of at least 12 months. *Id.* § 1.00C(6)(a). That source must give a "detailed description" of "objective clinical findings" based on "direct observations." *Id.* § 1.00C(2). Neither subjective evidence nor findings on imaging or other diagnostic tests is "a substitute for findings on physical

examination." *Id.* For "canes," the SSA requires evidence from a medical source describing how the claimant "walk[s] with the device." *Id.* § 1.00C(6)(d).

For claims decided during the "pandemic period," defined as the period beginning April 2, 2021, and ending May 11, 2025, the claimant's evidentiary burden is reduced in certain ways. *See id.* § 1.00C(7)(a). The record need not establish the simultaneous presence of all the required medical criteria. *Id.* § 1.00C(7)(c). Instead, "all of the relevant criteria must appear in the medical record within a consecutive 12-month period." *Id.* However, "[o]nce this level of severity is established, the medical record must also show that this level of severity has continued, or is expected to continue, for a continuous period of at least 12 months." *Id.*

Here, substantial evidence supports the ALJ's step-three finding because Johnson failed to prove that her impairments met or equaled all of the criteria of Listing 1.15, and it is clear from his decision that the ALJ considered those criteria as required. Specifically, there was sufficient evidence to support the ALJ's finding that Johnson failed to satisfy criterion D of Listing 1.15. Section D provides:

> D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:
>
> 1. A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see

1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or

2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), and a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or

3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).

§ 1.15D.

On appeal, Johnson does not argue that she uses an assistive device involving the use of both hands or that she is unable to use both upper extremities.  Therefore, sections D(1) and D(3) do not apply.  Johnson, instead, argues that she satisfies section D(2) based on her cervical and lumbar spine impairments and her "use of a cane with inability to *fully* use her left hand."  However, the ALJ identified ample evidence indicating that Johnson did not have an "inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements," and that she did not have "a documented medical need" for a one-handed cane.  *See* § 1.15D(2).

As to the first issue, the ALJ pointed to a report from Dr. Clinton Bush, who, after examining Johnson, concluded that her range of motion was "within normal limits" for all extremities, that she had "5/5" motor strength in her upper and lower extremities, and that she had "5/5" grip strength in both hands. Dr. Bush added that Johnson "can turn a doorknob and manipulate small objects with either hand." The ALJ also found that, on September 17, 2021, Johnson "sought emergency room treatment for back pain," but "[u]pon examination," was found to have "5/5 strength in the upper extremities." Johnson herself tells us that her "left-sided cervical spine radiculopathy [ ] *interferes* with her ability to use her left hand"—not that she is *unable* to use her left hand to independently engage in work-related activities involving fine and gross movements.

As to the second issue, the ALJ considered Johnson's testimony that she uses a cane but ultimately determined that its use was not medically necessary. As the ALJ explained—and as Johnson does not contest—there were only two references to the use of a cane in the entire record: an August 2021 "Assessments and Treatment" entry stating, "Musculoskeletal Other: Patient walks with cane risk fall bandage applied," and a November 2021 "Assessments and Treatment" entry stating, "Breast Symptoms Location/Description using cane." Neither entry suggests that Johnson requires a cane as a matter of medical necessity. Furthermore, and again as quoted by the ALJ, Dr. Bush reported that Johnson "can stand on either foot independently," "can also stand without difficulty on

heels and toes," "ambulates with no detectable limp[,] and does not require the use of any supportive device for ambulation."

Johnson's only argument on this point is that the "ALJ never mentioned Dr. [Eliades] Carmenate's August 2020 warning that Johnson 'needs to buy a medical insurance and take care of [her lower back pain], otherwise the lumbar spine condition worsens and she may have difficulty walking[.]'" For one thing, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)). The ALJ considered Johnson's medical condition as a whole. More importantly, Dr. Carmenate's clinical notes (which hypothesize that Johnson *may* have difficulty walking in the future) do not state that Johnson has a medical need for a cane, nor do they describe the "circumstances for which [Johnson] need[s] to use the assistive device," as required under 20 C.F.R. pt. 404, subpt. P, App. 1 § 1.00(C)(6)(a). Outside of Dr. Carmenate's notes, Johnson has not identified anything in the record that could qualify as evidence of a "documented medical need" for a one-handed, hand-held assistive device. *See Barron*, 924 F.2d at 229 ("The burden was [the claimant's] to show that his impairments combined to meet or equal a listed impairment in Appendix 1 of Subpart P.").

For these reasons, we find that there was substantial evidence in the record to support the ALJ's finding that Johnson failed to satisfy criterion D of Listing 1.15. It is clear from his decision that the ALJ considered Listing 1.15's criteria as required. *See Wilson*, 284 F.3d at 1224 (holding that the ALJ's determination—that "the medical evidence establishes that [the claimant] had [several injuries] which constitute a 'severe impairment', but that he did not have an impairment or combination of impairments" that medically equaled a listing—was "evidence that [the ALJ] considered the combined effects of [the claimant]'s impairments"). Having failed to satisfy one of the criteria, Johnson does not qualify under Listing 1.15. *Zebley*, 493 U.S. at 530. Accordingly, we affirm as to this issue.

## IV.

Second, Johnson argues that the ALJ's "residual functional capacity" finding was not supported by substantial evidence. In his report, the ALJ found that Johnson had the RFC to perform sedentary work with "non-exertional limitations" as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). Based on this finding and testimony from a vocational expert, the ALJ concluded that Johnson could "perform her past relevant work as a telephone solicitor as actually and generally performed." The magistrate judge and the district court agreed, holding that substantial evidence supported the ALJ's RFC finding.

Where a claimant's impairment does not meet or equal the criteria for a listed impairment, the ALJ must proceed to step four of the five-step process set out in 20 C.F.R. § 404.1520(a) to

determine the claimant's RFC, considering whether the claimant's RFC permits her to perform her past relevant work. *Id.* § 404.1520(a)(4). The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite h[er] impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 CFR §§ 404.1545(a), (b), (c); 404.1567.

When a claimant alleges that she has several impairments, the ALJ must "consider the impairments in combination and . . . determine whether the combined impairments render the claimant disabled." *Jones v. Dep't of Health & Hum. Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991); *see* 20 C.F.R. § 404.1545(a)(2). "Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019). However, the mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work or undermine the ALJ's determination in that regard, because the severity of a medically ascertained disability must be measured in terms of its effect upon ability to work. *Moore*, 405 F.3d at 1213 n.6 (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

A claimant's subjective symptoms, such as pain, include the effectiveness and side effects of any medications for those symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(iv). We have held that an ALJ's failure to inquire further into the side effects of a counseled claimant's medications did not deprive her of a meaningful opportunity to be heard when the only indication of side effects was her

statement that her medication made her drowsy.  *See Cherry v. Heckler*, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985).

In considering whether a claimant can perform her past relevant work, "the ALJ must consider all the duties of that work and evaluate her ability to perform them in spite of her impairments." *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990).  The ALJ may rely on the testimony of a vocational expert in performing this analysis.  20 C.F.R. § 404.1560(b)(2).  When a claimant cannot perform a full range of work at a given level of exertion, the ALJ must rely on a vocational expert's testimony.  *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (quotation marks omitted).  If the claimant can perform her past relevant work, she is not disabled.   20 C.F.R. §§ 404.1520(a)(4), 404.1560(b)(3).

Here, substantial evidence supports the ALJ's RFC finding that Johnson could perform a reduced range of sedentary work.  In discussing Johnson's RFC, the ALJ stated that he carefully considered "the entire record," including medical opinions and prior administrative medical findings, as well as "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." The ALJ first acknowledged that Johnson had severe impairments related to her back, including chronic pain.  He also agreed with

Dr. Carmenate that Johnson should avoid heavy lifting of more than 10 pounds, standing for long periods, and long-distance walking.

The ALJ then found that x-rays taken in October 2019 and an MRI taken in January 2020 showed mild spondylosis of the lumbar spine and mild degenerative changes. He noted that x-rays taken in November 2020 revealed "no evidence of spondylolisthesis on the flexion-extension views," while a January 2021 MRI of the lumbar spine revealed no significant changes. According to the ALJ, Johnson was evaluated by Dr. Marimer Rensoli-Velazquez on March 11, 2021, and Dr. Rensoli-Velazquez ascertained that Johnson had "full range of motion in her extremities, 5/5 strength in the upper extremities, 5/5 strength in the lower extremities[,] no gross deficit of motor or sensory function," and no "inflammatory back pain." Additionally, the ALJ pointed to testimony from a vocational expert, who explained that "a person of the claimant's same age, education, work experience, and residual functional capacity could perform the claimant's past work as a telephone solicitor." This substantial evidence supports the ALJ's determination that Johnson was capable of performing a reduced range of sedentary work and capable of performing her past work as a telephone solicitor.

Against all this, Johnson offers three arguments: (1) The ALJ's RFC finding did not consider her absences for medical treatment while at work; (2) The ALJ did not take into account her chronic pain and thus failed to address her exertional and non-

exertional limitations; and (3) The ALJ "vastly overestimated" her capacity to handle, finger, feel, and sit for prolonged periods of time and did not account for medication side effects that allegedly reduced her ability to concentrate and handle workplace changes and stress.

We find none of these arguments persuasive. As to absenteeism, Johnson tells us that she went to twenty-seven medical appointments between August 2, 2019, and November 1, 2021, a span of around twenty-seven months. Johnson avers that "there is no reflection of the impact of Johnson's absenteeism in the ALJ's RFC finding or elsewhere in his decision." But Johnson provides no evidence showing that her medical appointments had to be scheduled during work hours or that they otherwise prevented her from working. *See Blackmon v. Comm'r of Soc. Sec.*, 2024 WL 3495022, at *7 (11th Cir. July 22, 2024) (holding that "the ALJ did not err by failing to include Blackmon's absenteeism as a limitation" where "nothing in the record show[ed] that Blackmon could not schedule future appointments outside of work hours, schedule more than one appointment per day, or schedule appointments on her off days, which would minimize the need to miss work").

Next, the ALJ did take into account Johnson's chronic pain and did address her exertional and non-exertional limitations. Indeed, the ALJ explicitly found that "[t]he claimant has the following severe impairments: disorders of the spine; high blood pressure; obesity; chronic pain; and radiculopathy." Further, he concluded that these severe impairments "significantly limit [Johnson's]

ability to perform basic work activities." He also found, based on careful consideration of the entire record, that Johnson had the following "non-exertional limitations":

> [T]he claimant can occasionally kneel, crouch, crawl, and stoop. She can occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. The claimant can frequently reach, and she can occasionally reach overhead. She can frequently handle, finger, and feel. The claimant can never be exposed to unprotected heights or hazards, and she can never be exposed to extreme cold or vibration.

Thus, not only did the ALJ address Johnson's chronic pain, but he expressly considered it when assessing her RFC.

Lastly, Johnson has not shown that the ALJ overestimated her capacity to handle, finger, feel, or sit for prolonged periods of time. Specifically, Johnson contends that the ALJ "failed to altogether consider her carpal tunnel syndrome as a severe or non-severe impairment at step two" and failed to consider her chronic pain. We have already explained that the ALJ addressed and accounted for Johnson's chronic pain. The ALJ also credited Johnson's testimony that she has carpal tunnel syndrome and used a special keyboard and mouse. To the extent that Johnson believes the ALJ should have considered her carpal tunnel syndrome at step-two of his analysis, the ALJ stated at the hearing that there were no references to carpal tunnel in the record, and Johnson's own attorney responded that she did not "have those records," and that

Johnson had mentioned carpal tunnel only "recently." Therefore, we reject Johnson's argument that the ALJ "vastly overestimated" Johnson's ability to reach, handle, finger, feel, or sit for prolonged periods of time.

Accordingly, we conclude that substantial evidence supports the ALJ's RFC finding.

## V.

Finally, Johnson argues that the ALJ erred when he concluded that her statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the evidence in the record. In his decision, the ALJ found that "the claimant's allegations of disabling back pain and left-sided numbness are inconsistent with the MRI scan of the claimant's lumbar spine that does not document any significant canal or foraminal stenosis" and "inconsistent with the physical examinations documenting the claimant's negative straight leg raising, intact/normal sensation, normal gait, normal ranges of motion, and equal and intact deep tendon reflexes." Johnson insists, to the contrary, that her allegations have been "remarkably consistent with the medical evidence of record throughout the entirety of the claims process," and that her "self-reported symptoms and limitations are entirely consistent" with doctors' opinions and her own hearing testimony. Johnson also argues that the ALJ misapplied the "pain standard" that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms.

We may review "unobjected-to factual and legal conclusions" in a magistrate judge's report and recommendation "for plain error if necessary in the interests of justice." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1). "After a magistrate judge has issued a report and recommendation under § 636(b)(1)(B), a party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009). "Frivolous, conclusive, or general objections need not be considered by the district court." *Id.* at 1361 (quotation marks omitted).

We have held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote*, 67 F.3d at 1561. Accordingly, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Id.* A claimant attempting to establish disability through her own testimony of subjective symptoms must show: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson*, 284 F.3d at 1225; *see also* 20 C.F.R. § 404.1529 (containing substantially similar language).

"If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225. "Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be

accepted as true." *Id.* However, "we will not disturb a clearly articulated" finding about subjective complaints "supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). And "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision" includes "enough to enable [us] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211.

Here, we review the district court's decision for plain error, as Johnson waived this issue on appeal by failing to file a sufficient objection to the magistrate judge's report and recommendation. Nonetheless, under any standard of review, the district court did not err, because the ALJ made a clearly articulated credibility finding and pointed to specific reasons (and objective evidence) for discrediting Johnson's subjective complaints of disabling pain. For example, the ALJ determined (using primary care treatment notes) that while Johnson did report lower back pain, doctors generally treated her with pain medication and occasional steroid injections. The ALJ noted that an MRI scan of Johnson's cervical spine taken on May 13, 2019, revealed only "mild degenerative changes." X-rays taken in November 2019 revealed no evidence of fractures, dislocations, subluxations, erosive changes, periosteal reactions, or soft tissue abnormalities. The ALJ identified a January 2021 MRI of Johnson's lumbar spine, which revealed no significant changes in Johnson's condition. The ALJ also cited Dr. Ian Cote's assessment that Johnson's January 2021 MRI scan "did not show any significant central canal stenosis, foraminal canal stenosis, or spondylolisthesis

*that would be causing [Johnson's] back pain or radiculopathy."* All of this evidence supports the ALJ's decision to discount Johnson's allegations of disabling pain.

In sum, substantial evidence supports the ALJ's assessment that Johnson's statements on the intensity, persistence, and limiting effects of her symptoms were inconsistent with the evidence of record. The ALJ's decision shows that he considered Johnson's medical condition as a whole. Because this Court will not disturb a clearly articulated credibility finding supported by substantial evidence, *see Mitchell*, 771 F.3d at 782, we affirm as to this issue.

★    ★    ★

We conclude that the Commissioner's decision to deny Johnson's claims for disability insurance benefits and supplemental security income benefits was supported by substantial evidence. Therefore, we affirm the district court's judgment upholding the Commissioner's decision.

**AFFIRMED.**